# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

GEORGE WELLS, )
)
       Petitioner, )
)
   v. ) No. 4:12-CV-2295-CDP
) **ECF**
TROY STEELE, )
)
       Respondent. )

## RESPONSE TO ORDER TO SHOW CAUSE WHY A WRIT OF HABEAS CORPUS SHOULD NOT BE GRANTED

### Statement of Custody and Parties

Petitioner George Wells is incarcerated at the Potosi Correctional Center in Mineral Point, Missouri, due to the sentence and judgment of the Circuit Court of St. Louis County, Missouri. A jury found Wells guilty of murder in the second degree and armed criminal action, and the court sentenced him to concurrent terms of life imprisonment. The jury also found Wells guilty of attempted robbery in the first degree and armed criminal action, and the court sentenced him to concurrent terms of fifteen years and twenty years imprisonment, with sentences running consecutively to the other two sentences. Wells is serving these sentences. Troy Steele, Warden of the Potosi Correctional Center, is Wells's custodian and is the proper respondent. 28 U.S.C. § 2254, Rule 2(a).

1

## Statement of Exhibits

1.  Respondent's Exhibit A is a copy of volume I of the trial transcript.

2.  Respondent's Exhibit B is a copy of volume II of the trial transcript.

3.  Respondent's Exhibit C is a copy of volume III of the trial transcript.

4.  Respondent's Exhibit D is a copy of volume IV of the trial transcript.

5.  Respondent's Exhibit E is a copy of the direct appeal legal file.

6.  Respondent's Exhibit F is a copy of Wells's brief on direct appeal.

7.  Respondent's Exhibit G is a copy of the State's brief on direct appeal.

8.  Respondent's Exhibit H is a copy of the opinion of the Missouri Court of Appeals, Eastern District, affirming the conviction and sentence.

9.  Respondent's Exhibit I is a copy of the transcript of the post-conviction hearing.

10.  Respondent's Exhibit J is a copy of the post-conviction appeal legal file.

11.  Respondent's Exhibit K is a copy of Wells's brief on post-conviction appeal.

12.     Respondent's Exhibit L is a copy of the State's brief on post-conviction appeal.

13.     Respondent's Exhibit M is a copy of the opinion of the Missouri Court of Appeals, Eastern District, affirming the denial of post-conviction relief.

## Summary of Argument

Wells raises five claims – four asserting ineffective assistance by trial counsel and one asserting trial court error.

Ground Five, the claim of trial court error, alleges that the trial court improperly admitted hearsay evidence.  This claim is not cognizable as the admission of evidence, with limited exceptions not applicable here, is a state law matter.  Even if this Court could review this claim, the state courts reasonably found that this testimony was not hearsay.

Two of the four claims of ineffective assistance of trial counsel, Ground Two (failure to exclude certain evidence of prior bad acts) and Ground Three (failure to object to improper cross-examination), are based on failure to pursue state law evidence objections at trial.  The Missouri Court of Appeals reasonably found that similar evidence was properly admitted; thus, the failure to object did not prejudice Wells.

Two of the four claims of ineffective assistance, Ground One (alibi witnesses) and Ground Four (other uncalled witnesses), involve the failure to

call witnesses to testify on Wells's behalf. Trial counsel called several alibi witnesses. The Missouri Court of Appeals reasonably found no prejudice because the additional witnesses' testimony was weaker than the testifying witnesses'. Only one of the other uncalled witnesses testified in post-conviction proceedings. This witness did not actually see the shooting and did not see the face of anybody other than the victim. Wells was not prejudiced by the failure to call this witness and failed to demonstrate prejudice from the other witnesses.

**Summary of Case**

I.    PROCEDURAL HISTORY

The State charged Wells with murder in the second degree, attempted robbery in the first degree, and two counts of armed criminal action arising from the shooting death of Rodney Marshall during a failed robbery attempt. Respondent's Exhibit E, pages 7-9, 10-17.

On direct appeal, Wells claimed that the trial court erred in allowing Darryl Lewis to testify about a conversation that he had with Wells and Michael Adams, alleging that the testimony was hearsay. Respondent's Exhibit F.

In his amended post-conviction motion, Wells raised four claims. First, Wells claimed trial counsel was ineffective in not calling alibi witnesses Mark Jackson and Dominique Nettles. Respondent's Exhibit J, pages 18-19, 23-31.

4

Second, Wells claimed that trial counsel was ineffective in failing to redact a statement by Arvette Ford to remove her comment that Wells had been locked up in a police department and in failing to object to other evidence of unrelated arrests. Respondent's Exhibit J, pages 19-20, 31-39. Third, Wells alleged that trial counsel was ineffective in failing to object when the State reviewed the testimony of other witnesses during its cross-examination of Shaun Black. Respondent's Exhibit J, pages 20-21, 39-51. Lastly, Wells asserted that trial counsel was ineffective for failing to call Richard Allen, Leroy Hulsey, Antoine Hayes, Travis Wallace, Brad Hale, and Tyrone Boyd to testify that Wells was not the person who shot Mr. Marshall. Respondent's Exhibit J, pages 22-23, 51-60. Wells challenged the denial of each of these four claims in his post-conviction appeal. Respondent's Exhibit K.

II.     HISTORY OF THE OFFENSE

On December 11, 2003, Wells went with Jerrick Jackson and Shaun Black to an apartment complex. Respondent's Exhibit B, pages 438, 440-42. Mr. Black and Wells asked Jerrick to be the lookout for a robbery, including keeping an eye out for the arrival of the target's car. Respondent's Exhibit B, pages 440-42, 444-46. When that car arrived, Jerrick signaled Wells and Mr. Black. Respondent's Exhibit B, page 446. When Jerrick signaled, Wells had already started walking across the street. Respondent's Exhibit B, pages 446-47.

Meanwhile, between 6:30 p.m. and 7:00 p.m., Rodney Marshall and his fiancée, Marquitta Harris, drove to her apartment. Respondent's Exhibit B, pages 250-51, 256-58. After parking her car, as she was getting her one-year-old daughter out of the car, Ms. Harris saw Wells approaching. Respondent's Exhibit B, page 261, 267. After a brief face-to-face encounter when Ms. Harris chased down her daughter who had run into Wells, Ms. Harris went back to taking stuff out of her car. Respondent's Exhibit B, pages 261-69. When Ms. Harris next looked up, Wells was standing beside her car. Respondent's Exhibit B, page 270. Wells was pointing a handgun at Mr. Marshall and ordered him to move. Respondent's Exhibit B, pages 271-72.

Mr. Marshall told Ms. Harris to run. Respondent's Exhibit B, page 273. Mr. Marshall and Wells began to struggle over the gun, and Ms. Harris heard multiple gunshots. Respondent's Exhibit B, pages 272-75, 448-49. The shots killed Mr. Marshall. Respondent's Exhibit B, pages 353-61. As she fled, Ms. Harris saw Jerrick on the parking lot. Respondent's Exhibit B, page 274.

After the shooting, the police showed photographs and photographic line-ups to Ms. Harris on several occasions. Respondent's Exhibit B, pages 283-88. About two weeks after the shooting, Ms. Harris identified Wells as the person who shot Mr. Marshall from a photographic line-up. Respondent's Exhibit B, page 286, 380-85. Several days later, Ms. Harris identified Wells from a physical line-up. Respondent's Exhibit B, pages 288-92, 385-89.

Several weeks later, Ms. Harris identified Jerrick as the lookout – first from a photographic line-up and then from a physical line-up.  Respondent's Exhibit B, pages 292-97, 389-94.

**Claims Raised**

I.      GROUND ONE

        A.      Wells's Claim to this Court

Wells claims that trial counsel was ineffective for failing to call Mark Jackson and "Dominique" (apparently Dominique Nettles) as alibi witnesses at trial.

        B.      Evidence in State Court

On the first day of trial, trial counsel notified the State about an alibi defense, and disclosed Frank Bradley and Tim Chapman as alibi witnesses.  Respondent's Exhibit B, page 227; Respondent's Exhibit E, pages 58-59.

Mr. Bradley testified that he was at Mr. Chapman's residence on the evening of December 11 when Wells arrived just before 7:00 p.m.  Respondent's Exhibit C, pages 589-90.  Mr. Chapman testified that Wells arrived around 7:00 p.m.  Respondent's Exhibit C, page 602.  In his testimony, Mr. Chapman mentioned "Mark" and "Dominique" as also being present.  Respondent's Exhibit C, page 605.

Trial counsel also called Michael Adams who testified that he was with Wells and Darrell Lewis on December 11 up until about 7:00 p.m. when he

and Mr. Lewis dropped off Wells at a gas station.  Respondent's Exhibit C, page 577.

When he testified, Wells claimed that he was with Mr. Lewis and Mr. Adams up until 7:00 p.m. when they dropped him off at a convenience store, and that he went directly from there to Mr. Chapman's residence. Respondent's Exhibit C, pages 628-29.

In his post-conviction testimony, trial counsel did not remember Mark Jackson or Dominique Nettles ever coming up as potential witness.[1] Respondent's Exhibit J, pages 72-73.  Because he did not remember Mark or Ms Nettles, trial counsel did not know the exact reason why he did not call them as witnesses.  Respondent's Exhibit J, page 73.   Trial counsel agreed that these two witnesses would have been cumulative to the testimony of the other alibi witnesses.  Respondent's Exhibit J, page 78.

Ms. Nettles testified that Wells was at Mr. Chapman's apartment on December 11.  Respondent's Exhibit I, page 11.  Ms. Nettles did not remember the time that Wells arrived at the residence, but claimed that he was there "the whole day" and the "day on into the night."  Respondent's Exhibit I, page 11.

---

[1] Mark and Ms. Nettles were mentioned in police reports on this case. Respondent's Exhibit J, page 73.

Mark testified that he was at Mr. Chapman's residence from the afternoon into the evening of December 11.  Respondent's Exhibit I, page 18. He further indicated that Wells was there with him and never left the house. Respondent's Exhibit I, page 18.

In his post-conviction testimony, Wells claimed that he had asked trial counsel to call Ms. Nettles and Mark as witnesses.  Respondent's Exhibit J, pages 93-94.  On cross-examination, Wells acknowledged his earlier testimony that he was with Mr. Lewis and Mr. Adams until he was dropped off at the gas station sometime after 6:00 p.m.  Respondent's Exhibit J, pages 98-99.

C.      Findings of State Courts

The motion court found that the proposed testimony from Mark and Ms. Nettles was cumulative to the alibi testimony provided by Mr. Adams, Mr. Bradley, Mr. Chapman, and Wells at trial.  Respondent's Exhibit J, pages 111-12.  Thus, the failure to call these two witnesses did not prejudice Wells. Respondent's Exhibit J, page 112.

The Missouri Court of Appeals noted that the testimony of Mark and Ms. Nettles contradicted the other alibi witnesses (including Wells) by placing Wells at Mr. Chapman's residence in the afternoon.  Respondent's Exhibit M, page 5.  To the extent that Mark's and Ms. Nettles's testimony supported Wells's alibi of being at Mr. Chapman's residence sometime after

6:00 p.m., that testimony was cumulative to the other alibi witnesses. Respondent's Exhibit M, page 5. Under these circumstances, Wells failed to demonstrate prejudice (or incompetence) from the failure to call Mark and Ms. Nettles. Respondent's Exhibit M, pages 5-6.

D. Standard of Review/Analysis of Claims

Under 28 U.S.C. § 2254(d), this Court defers to the decision of the state court unless that decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of facts. The motion court and the Missouri Court of Appeals correctly stated the standard governing claims of ineffective assistance of counsel under established federal law. Respondent's Exhibit J, pages 116-17; Respondent's Exhibit M, pages 3-4. As such, the issue in this case is whether the state courts reasonably applied that standard and reasonably determined the relevant facts.

Both Mark and Ms. Nettles provided testimony that was inconsistent with the testimony of every other witness who had contact with Wells on the day of the shooting. All of these witnesses, including Wells himself, stated that Wells was with Mr. Adams and Mr. Lewis during the afternoon and did not arrive at Mr. Chapman's residence before 6:00 p.m. Respondent's Exhibit C, pages 577, 589-90, 602, 628-29; Respondent's Exhibit J, pages 98-99. Ms. Nettles on the other hand claimed that Wells was at the residence the "whole

day." Respondent's Exhibit I, page 11. Mark claimed that Wells was at the residence during the afternoon and never left. Respondent's Exhibit I, page 18. In light of this contradiction between these two witnesses and Wells's alibi defense, the state courts did not unreasonably determine the facts or apply the law in concluding that Wells failed to demonstrate a reasonable probability that the result of the trial would have been different if trial counsel had called Mark and Ms. Nettles. *See Armstrong v. Kemna,* 590 F.2d 592, 604-05 (8th Cir. 2010) (proper to consider relationship between testimony of called and uncalled witnesses in determining prejudice)

This Court should deny Ground One.

## II. GROUND TWO

### A. Wells's Claim to this Court

Wells claims that trial counsel was ineffective for failing to redact Arvette Ford's written statement to exclude references to evidence that Wells had been incarcerated.[2]

---

[2] The petition only expressly refers to Ms. Ford's written statement, but refers back to the State post-conviction proceedings in which this claim also included other evidence that Wells had been incarcerated. Because Wells testified at trial, the State court's decision rejecting the allegation of prejudice was reasonable regardless of whether this claim is limited to Ms. Ford's written statements or includes the other references challenged in state court.

B.    Evidence in State Court

Ms. Ford worked as a dispatcher for a police department.  Respondent's Exhibit B, pages 339.  During the investigation, Ms. Ford had told the detectives – both orally and in a written statement – that she had seen Wells with a "gold grill" on his teeth.  Respondent's Exhibit B, pages 342-43.  At trial, she claimed that she had confused Wells with Reynard Rayford.  Respondent's Exhibit B, pages 340-41.

In the written statement, Ms. Ford indicated that she had seen Wells when he was "locked up" by her police department.  Respondent's Exhibit B, page 343, 379.  Trial counsel did not object to Ms. Ford reading from this statement.  Respondent's Exhibit B, pages 342-43.  When the State formally offered that written statement, trial counsel indicated "no objection" to that exhibit.  Respondent's Exhibit B, page 347.

After Jerrick Jackson testified, the State played a videotape of Jerrick's statement.  Respondent's Exhibit C, pages 472-77.  As the tape was playing, trial counsel noticed that Jerrick mentioned that Wells had been in jail on drug charges.  Respondent's Exhibit C, page 478.  Trial counsel asked the trial court to instruct the jury to disregard those comments.  Respondent's Exhibit C, page 479.  After some discussion, the trial court declined to give such an instruction.  Respondent's Exhibit C, page 482.

Darrell Lewis testified, without objection, that Wells and Mr. Adams told him that they had been in and out of jails. Respondent's Exhibit C, page 496.

Wells testified in his own behalf and admitted to having a conviction for possession of marijuana with intent to distribute. Respondent's Exhibit C, pages 625, 632.

In the post-conviction case, trial counsel testified that he did not consider requesting that Ms. Ford's statement be redacted at the time of trial, but, looking back, thought that he would consider requesting that it be redacted. Respondent's Exhibit J, pages 73-74. He later acknowledged that Ms. Ford's statement only became admissible when Ms. Ford gave inconsistent testimony. Respondent's Exhibit J, page 79.

Trial counsel noted that he objected to Mr. Lewis's testimony on relevance, and did not specifically note that it was irrelevant because it was evidence of prior bad acts. Respondent's Exhibit J, page 74.

C.     Findings of State Courts

The motion court found that the evidence of Wells's prior incarcerations was minimal and isolated. Respondent's Exhibit J, pages 112-14. Especially as Wells admitted to have a prior conviction, Wells failed to demonstrate any prejudice from the failure to have this evidence excluded. Respondent's Exhibit J, pages 112-14. Particularly as the evidence from Ms. Ford was

unexpected, trial counsel's normal strategy of not objecting unless evidence is particularly damaging is reasonable, and Wells failed to show that counsel was incompetent for failing to object to either the references in Ms. Ford's statement or to Mr. Lewis's testimony. Respondent's Exhibit J, page 113.

The Missouri Court of Appeals found that Wells failed to show prejudice as similar evidence (his own testimony about his record) was properly admitted and this improper evidence was isolated and not emphasized. Respondent's Exhibit M, pages 7-8.

D.      Standard of Review/Analysis of Claims

Under 28 U.S.C. § 2254(d), this Court defers to the decision of the state court unless that decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of facts. The motion court and the Missouri Court of Appeals correctly stated the standard governing claims of ineffective assistance of counsel under established federal law. Respondent's Exhibit J, pages 116-17; Respondent's Exhibit M, pages 3-4. As such, the issue in this case is whether the state courts reasonably applied that standard and reasonably determined the relevant facts.

The primary evidence against Wells was the testimony of Ms. Harris positively identifying him as the shooter and Jerrick's testimony about the shooting (placing Wells as the person who confronted Mr. Marshall). The

14

brief mention of Wells's previous encounters with law enforcement was insignificant in comparison to that evidence.  Additionally, Wells admitted in his own testimony that he had a criminal history.  Respondent's Exhibit C, pages 625, 632.  The state courts did not unreasonably determine the facts or apply the law in concluding that, even if trial counsel has successfully excluded the references by Ms. Ford and Mr. Lewis to Wells's criminal history, Wells failed to show any reasonable probability of a different result.

This Court should deny Ground Two.

III.   GROUND THREE

A.     Wells's Claim to this Court

Wells claims that trial counsel was ineffective in failing to object to a question during the cross-examination of Shaun Black about whether he knew that Marquitta Harris said that she "came face to face" with Wells.[3]

B.     Evidence in State Court

When Wells first approached Ms. Harris and Mr. Marshall, Ms. Harris's toddler ran toward Wells.  Respondent's Exhibit B, pages 261-63. When she caught up with her daughter, Ms. Harris was about five feet away

---

[3] The petition only refers to this one specific question, but refers back to the state post-conviction proceeding that asserted that trial counsel should have objected to multiple questions posed to Mr. Black about the testimony of other witnesses.  The state courts finding of no prejudice was reasonable regardless of whether this claim is limited to the one question or expanded to include all questions noted in the amended post-conviction motion and post-conviction appeal.

from Wells and "looked him in the face" from approximately five feet away. Respondent's Exhibit B, page 265.

Jerrick Jackson testified on direct, but recanted on cross-examination, that he was with Shaun Black on the evening of December 11 when they picked up Wells and went to an apartment complex. Respondent's Exhibit B, pages 438, 440-41. Jerrick testified that, once at the apartment complex, Wells and Mr. Black had him serve as a lookout to signal when the target vehicle for a robbery arrived. Respondent's Exhibit B, pages 442, 444-46. Jerrick further testified that Wells approached Mr. Marshall and struggled with Mr. Marshall, and then Jerrick heard gunshots. Respondent's Exhibit C, pages 447-49.

When called as a defense witness, Mr. Black denied seeing Jerrick or Wells on the evening of December 11. Respondent's Exhibit C, pages 552-54.

During cross-examination, Mr. Black volunteered that the people in the courtroom related to Mr. Marshall did not know "the truth about what really happened." Respondent's Exhibit C, page 559. The State then asked, without objection, whether Mr. Black knew that Ms. Harris testified that she was "face-to-face" with Wells on December 11. Respondent's Exhibit C, page 559. Mr. Black responded that, while he realized "that's what's being said," he did not realize "that's the facts." Respondent's Exhibit C, page 559. The State then proceeded to ask, without objection, whether Mr. Black was saying

16

that he did not have any involvement in the shooting and had not seen Mr. Jackson in months and did not see Wells that night. Respondent's Exhibit C, page 560.

Later, the State asked, without objection, whether Mr. Black was aware that Ms. Harris picked out two people – Mr. Jackson and Wells – who just happened to know each other. Respondent's Exhibit C, page 563. The State proceeded to ask additional questions about whether Mr. Black was aware of what Ms. Harris claimed to have seen and whether it was a coincidence that the two people identified by Ms. Harris just happened to know each other. Respondent's Exhibit C, pages 563-65.

In the post-conviction case, trial counsel testified that he could have objected to this cross-examination as argumentative, speculative, or invading the province of the jury. Respondent's Exhibit J, pages 75-76. While trial counsel did not specifically recall why he did not object to these questions, trial counsel indicated that he normally did not object unless the information was "blatantly troublesome" because objecting would "escalate" the evidence for the jury, potentially allowing the jury to hear that information multiple times. Respondent's Exhibit J, pages 75-76.

C.    Findings of State Courts

The motion court found that Mr. Black opened the door to this cross-examination. Respondent's Exhibit J, page 114. Furthermore, as these

questions merely duplicated information already before the jury, trial counsel's strategy of not objecting to non-damaging information to avoid emphasizing it was reasonable. Respondent's Exhibit J, page 114. Likewise, as this evidence was already before the jury, the failure to object did not prejudice Wells. Respondent's Exhibit J, pages 114-15.

The Missouri Court of Appeals found that Wells failed to overcome the presumption of competence and failed to demonstrate prejudice because all of the evidence discussed during the allegedly improper questioning had been properly admitted earlier in the case. Respondent's Exhibit M, page 11.

D. Standard of Review/Analysis of Claims

Under 28 U.S.C. § 2254(d), this Court defers to the decision of the state court unless that decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of facts. The motion court and the Missouri Court of Appeals correctly stated the standard governing claims of ineffective assistance of counsel under established federal law. Respondent's Exhibit J, pages 116-17; Respondent's Exhibit M, pages 3-4. As such, the issue in this case is whether the state courts reasonably applied that standard and reasonably determined the relevant facts.

For the most part, the proposed objections by Wells go to the form of the question, not the substance of the evidence. Ultimately, objections about

form (and the other objections noted during the post-conviction hearing) are about the way that lawyers should act in court and the best and most reliable way to introduce evidence and avoid improper and inadmissible evidence. Because these objections do not impact the substance of the evidence introduced at trial, the failure to make these objections does not prejudice a defendant. As the questions in this covered evidence that had been properly admitted and as the prosecutor could have made the same point in closing argument as he made with these questions, Wells has failed to demonstrate a reasonable probability of a different result at trial if counsel had objected.

This Court should deny Ground Four.

## IV.    GROUND FOUR

### A.    Wells's Claim to this Court

Wells claims that trial counsel was ineffective for failing to call Richard Allen, Leroy Hulsey, Antoine Hayes, Travis Wallace, Brad Hale, and Tyrone Boyd as witnesses.

### B.    Evidence in State Court

Trial counsel called Shaun Black who testified that he was not present with Jerrick Jackson and Wells at the time of the murder. Respondent's Exhibit C, pages 552-54. Trial counsel also called Michael Adams who testified that he was with Wells and Darrell Lewis up until about 7:00 p.m. Respondent's Exhibit C, page 577.

In his post-conviction testimony, trial counsel testified that he did not specifically remember Wells mentioning Richard Allen, Leroy Hosley, Antoine Hayes, Travis Wallace, Brad Hale, or Jerome (Tyrone) Boyd as possible witnesses although these individuals were noted in the police reports. Respondent's Exhibit J, page 76-78. Based on those reports, Mr. Allen was an alternative suspect at one point for admitting to the shooting, but later recanted. Respondent's Exhibit J, pages 76, 80. Mr. Hosley had supposedly admitted to being involved in killing Mr. Marshall, but recanted after being confronted about inconsistencies between his version of events and Ms. Harris's version of events. Respondent's Exhibit J, pages 77, 81. Mr. Wallace had supposedly given statements that Mr. Hayes and Mr. Allen shot Mr. Marshall, but later recanted. Respondent's Exhibit J, pages 77, 80. Mr. Boyd claimed to have seen the murder. Respondent's Exhibit J, page 78. Ms. Harris viewed photographic line-ups that included Mr. Allen and Mr. Wallace, but did not identify either as being involved in the shooting. Respondent's Exhibit J, pages 80-81.

Of these witnesses, only Mr. Hale testified in the post-conviction case. Respondent's Exhibit I. Mr. Hale stated that he was in his apartment when he heard three gunshots. Respondent's Exhibit I, page 7. When he walked outside, he saw one person fall to the ground in the street and two other people running around the corner. Respondent's Exhibit I, page 7. Mr. Hale

20

only saw the face of Mr. Marshall, not the face of the shooter or the two people running. Respondent's Exhibit I, pages 8-9.

Motion counsel could not find and produce the other witnesses at the time scheduled for the post-conviction hearing. Respondent's Exhibit I, pages 23-24. The motion court gave motion counsel a second opportunity to locate and produce these witnesses. Respondent's Exhibit I, pages 25-26. Motion counsel still could not locate and produce these witnesses. Respondent's Exhibit I, pages 26-30. The motion court declined to give motion counsel a third opportunity to find and produce these witnesses. Respondent's Exhibit I, page 30.

Wells testified that he asked trial counsel to follow-up on these witnesses and alternative suspects. Respondent's Exhibit I, pages 95-97. Wells claimed that when he asked counsel at trial about why these witnesses were not there, trial counsel stated that he had just forgot. Respondent's Exhibit I, page 97.

C.    Findings of State Courts

The motion court found that, other than Mr. Hale, Wells failed to prove that these witnesses would have been testified at trial and would have given favorable testimony if they had testified. Respondent's Exhibit J, pages 115-16. As to Mr. Hale, the failure to call Mr. Hale did not prejudice Wells

21

because Mr. Hale could not identify the shooter (and thus could not say that Wells was not the shooter). Respondent's Exhibit J, page 116.

The Missouri Court of Appeals found that, as he failed to present any testimony from the witnesses other than Mr. Hale, Wells failed to carry his burden of proof that counsel was ineffective in failing to call these witnesses. Respondent's Exhibit M, page 13. Furthermore, given that Mr. Hale's testimony did not aid Wells, the Missouri Court of Appeals found that Wells failed to demonstrate incompetence or prejudice from the failure to call Mr. Hale as a witness. Respondent's Exhibit M, page 13.

D.      Standard of Review/Analysis of Claims

Under 28 U.S.C. § 2254(d), this Court defers to the decision of the state court unless that decision was contrary to or involved an unreasonable application of federal law as determined by the United States Supreme Court, or involved an unreasonable determination of facts. The motion court and the Missouri Court of Appeals correctly stated the standard governing claims of ineffective assistance of counsel under established federal law. Respondent's Exhibit J, pages 116-17; Respondent's Exhibit M, pages 3-4. As such, the issue in this case is whether the state courts reasonably applied that standard and reasonably determined the relevant facts.

As only Mr. Hale testified at the post-conviction hearing, the state courts reasonably determined that Wells failed to carry his burden of showing

22

prejudice from the failure to call these other witnesses. Wells had the opportunity to produce evidence supporting his claim that these witnesses would have testified if called and was unable to do so.

As to Mr. Hale, by his own testimony, Mr. Hale did not get a good look at the shooter and would have been unable to whether Wells was the shooter. Respondent's Exhibit I, pages 8-9. There is no reasonable probability that the result of the trial would have been different if Mr. Hale testified.

This Court should deny Ground Four.

V.      GROUND FIVE

A.      Wells's Claim to this Court

Wells claims that the court erred in allowing Darryl Lewis to testify to "hearsay statements" that included statements by Wells.

B.      Cognizability

This ground alleges trial error on the admissibility of evidence under the state law rules of hearsay. A finding that there was an error of state law does not authorize a federal court to grant a writ of habeas corpus. 28 USC § 2254; *Wilson v. Corcoran,* 131 S. Ct. 13, 16 (2010); *see also Poe v. Caspari,* 39 F.3d 204, 207 (8th Cir. 1994) (claim that, under state law, trial court lacked jurisdiction is not a basis for habeas relief).

This Court should decline review on Ground Five.

23

C.    Evidence in State Court

In the early morning of December 11, Wells and Michael Adams went to the apartment of Darrell Lewis where they spent the night.  Respondent's Exhibit C, pages 486-87.  Mr. Lewis owed Wells and Mr. Adams some money, and Mr. Adams went with Mr. Lewis on the morning of December 11 when Mr. Lewis went to get his paycheck.  Respondent's Exhibit C, pages 487-90.

Mr. Lewis's paycheck was not at his workplace so Mr. Lewis and Mr. Adams returned to Mr. Lewis's apartment and picked up Wells.  Respondent's Exhibit C, pages 489-90.  Ultimately Mr. Lewis dropped Wells off around 6:30 p.m., and returned home with Mr. Adams, having failed to get his paycheck.  Respondent's Exhibit C, 492-94.

The State asked Mr. Lewis about the conversation between him and Wells and Mr. Adams.  Respondent's Exhibit C, page 495.  Trial counsel unsuccessfully objected based on relevance.  Respondent's Exhibit C, page 496.  Mr. Lewis stated that they were unhappy about not getting paid.  Respondent's Exhibit C, page 496.  Mr. Lewis also stated that Mr. Adams and Mr. Wells mentioned that they had been in jails and told Mr. Lewis that they intended to collect their money.  Respondent's Exhibit C, page 496.  The State asked Mr. Lewis if he took the last comment as a threat.  Respondent's Exhibit C, page 496.  After Mr. Lewis indicated that he did, trial counsel

24

unsuccessfully objected that this statement was "still hearsay."  Respondent's

Exhibit C, page 496.

D.      Findings of State Courts

The Missouri Court of Appeals found that the question of whether Mr.

Lewis took the statements from Mr. Adams and Wells as a threat was not

offered for the truth of those statements, and, therefore, was not hearsay.

Respondent's Exhibit H, page 6.  The Missouri Court of Appeals also found

that the relevance objection was meritless because Wells's desire to get

money could be a motive for the attempted robbery.  Respondent's Exhibit H,

page 6.

E.      Standard of Review/Analysis of Claims

Under 28 U.S.C. Section 2254(d), this Court defers to the decision of the

state court unless that decision was contrary to or involved an unreasonable

application of federal law as determined by the United States Supreme

Court, or involved an unreasonable determination of facts.

With a handful of exceptions (e.g., the Confrontation Clause), rules of

evidence are a matter of state law, not a matter of constitutional significance.

In *Dowling v. United States,* 493 U.S. 342 (1989), in the context of other

crimes evidence, the Supreme Court rejected a request to hold that improper

evidence would rise to the level of a due process violation.  493 U.S. at 352-54.

Even under the broader pre-AEDPA review, the Eighth Circuit noted that not

every violation of state evidentiary rules constitutes a due process violation.[4] *Anderson v. Goeke,* 44 F.3d 675, 679 (8th Cir. 1995). To constitute a due process violation, the alleged improper evidence must be "so egregious that [it] fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Id.* Neither of these cases suggests, however, that the due process clause establishes a comprehensive code governing the introduction of evidence at a criminal trial.

Even if this ground were treated as attempting to assert a Confrontation Clause claim (instead of a due process claim), the United States Supreme Court has recognized that the Confrontation Clause only applies to testimonial statements, and that states are free to adopt their own hearsay rules for dealing with non-testimonial hearsay. *Crawford v. Washington,* 541 U.S. 36, 51, 68 (2004).

As explained in *Crawford* (and further clarified in subsequent cases), the Confrontation Clause was primarily direct at the use of ex parte pre-trial interrogations of witnesses as evidence against a criminal defendant without requiring the actual testimony of the witnesses. *Id.* at 50. In discussing what qualified as testimonial, the United States Supreme Court

---

[4] In this case, the state court found that there was no violation of state evidentiary rules. Exhibit H, page 6. On habeas review, this Court does not re-examine the state court's determination of state law. *Schleeper v. Groose,* 36 F.3d 735, 737 (8th Cir. 1994).

distinguished between formal statements to government officials (which would qualify as testimonial) and casual remarks to acquaintances (which would not) *Id.* at 51.

The remarks by Wells and Mr. Adams to Mr. Lewis were not testimonial statements. As such, the admissibility of these statements was solely a matter of state law. This Court defers to the state court's determination about whether these statements are admissible. *Schleeper v. Groose,* 36 F.3d 735, 737 (8th Cir. 1994).

This Court should deny Ground Five.

## Conclusion

WHEREFORE, for the reasons herein stated, respondent prays that the Court dismiss the petition without further judicial proceedings.

Respectfully submitted,

CHRIS KOSTER
Attorney General

\s\ *Terrence M. Messonnier*
TERRENCE M. MESSONNIER
Assistant Attorney General
Missouri Bar No. 42998

P. O. Box 899
Jefferson City, MO  65102
(573) 751-3321
(573) 751-3825 fax
Direct Phone (816) 889-5031
Terrence.messonnier@ago.mo.gov
Attorneys for Respondent

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system. I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document postage prepaid, this 8 day of April, 2013, to:

George Wells
Inmate Number 1122956
Potosi Correctional Center
11593 State Highway O
Mineral Point, Missouri 63660


/s/ Terrence M. Messonnier
Terrence M. Messonnier
Assistant Attorney General